IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02414-KAS

EBONY COLE, individually and in her capacity as Administrator of the Estate of BRANDON COLE, deceased; and,
A.C., J.C., and M.C., minors, in their individual capacities as wrongful death beneficiaries of BRANDON COLE, deceased,

Plaintiffs,

v.

CITY OF DENVER;
CHIEF RON THOMAS, individually and in his capacity as police chief;
STEVEN WATSON, individually and in his capacity as a police officer;
AUDREY MCANDREWS, individually and in her capacity as a police officer;
SGT. BRIAN HUSUM, individually and in his capacity as a police officer;
CPL. BRIAN HOLM, individually and in his capacity as a police officer; and,
JOHN DOES NOS. 1-10,

Defendants.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Motion to Dismiss** (the "Motion") [#22]. Plaintiffs filed a Response [#39] and Defendants filed a Reply [#40]. This case has been referred to the undersigned for all purposes on consent of the parties. *Signed Consent/Non-Consent Form* [#33]; *Order of Reference* [#34]. The Court has reviewed the briefs, the case file, and the applicable law. Based on the following, the Court **ORDERS** that the Motion [#22] be **GRANTED in part and DENIED in part**.[1]

[1] At the Scheduling Conference, which was held after Defendants' Motion [#22] became ripe, the Court granted Plaintiffs leave to file an amended complaint to address and render moot Defendants' arguments under Fed. R. Civ. P. 12(b)(1). *See Courtroom Mins.* [#43] at 1. Plaintiffs timely filed the Amended Complaint [#42]. Though the Amended Complaint moots the Rule

## I. Background

This lawsuit arises from an encounter with police that turned fatal. On August 5, 2023, Plaintiffs' neighbor initiated a 911 call to obtain medical assistance for Mr. Brandon Cole and his wife Plaintiff Ebony Cole, after the neighbor observed Mrs. Cole sitting on the ground near her wheelchair, with Mr. Cole parked on the street nearby. *Am. Compl.* [#42] ¶¶ 2, 35, 42.

Two Denver Police Department (DPD) officers, Defendant Steven Watson and Defendant Audrey McAndrews, were dispatched to the scene, arriving in separate vehicles from opposite directions. *Id.* ¶¶ 37, 41. When Defendants Watson and McAndrews arrived, they observed Mrs. Cole sitting near the curb, Mr. Cole leaning inside his SUV on the driver's side door, and their teenage child standing next to Mrs. Cole. *Id.* ¶ 44. Defendant Watson's vehicle approached the front of Mr. Cole's vehicle, while Defendant McAndrews' vehicle approached the rear. *Id.* ¶¶ 42-43. Defendants had previously encountered the Coles on calls to assist Mr. Cole with medical issues. *Id.* ¶ 83.

As Defendant McAndrews exited her vehicle and approached Mr. Cole, Mrs. Cole stated, "don't, don't pull your gun out on my husband." *Id.* ¶ 46. McAndrews responded by asking if Mrs. Cole required emergency medical services, to which she responded by asking for an ambulance. *Id.* ¶ 47. As Defendant Watson exited his vehicle and approached Mr. Cole, he yelled, "Yo, Brandon," to which Mr. Cole responded by standing up, shutting the car door, and turning to face Watson. *Id.* ¶¶ 49-51. While standing behind him, Defendant McAndrews told Mr. Cole to show his hands. *Id.* ¶ 52. Mr. Cole walked

12(b)(1) arguments, none of the amendments concern Defendants' Rule 12(b)(6) arguments. Therefore, the Amended Complaint's filing did not render moot Defendants' Motion.

towards the opposite side of the street, towards the sidewalk, at which point McAndrews told him to stop. *Id.* ¶ 53.

Still facing Defendant Watson, Mr. Cole yelled, "Let's go! Let's go!," Mrs. Cole screamed "Stop," and Mr. Cole turned to her to say, "No, fuck you." *Id.* ¶¶ 54-57. Mr. Cole then approached Defendant Watson, shouting vulgarities at which point Watson drew his Taser and retreated to create space between himself and Mr. Cole. *Id.* ¶¶ 57-58. Defendant McAndrews, meanwhile, approached Mr. Cole from his left-hand side by walking up the sidewalk, also drawing her service handgun. *Id.* ¶¶ 58-59. Defendant McAndrews continued approaching Mr. Cole while yelling, "Stop! Hey Brandon. Look at me. Stop, hey." *Id.* ¶ 60.

Mr. Cole responded to Defendant McAndrews' attempt to get his attention by turning away from Defendant Watson and looking to, and moving towards, McAndrews. *Id.* ¶¶ 62-63. Mr. Cole's gait and demeanor were unsteady and uncoordinated, he made no gestures that threatened the Defendants or others, and he was holding a magic marker. *Id.* ¶¶ 64-67. As Mr. Cole moved towards Defendant McAndrews, Defendant Watson deployed his Taser, and less than a second later, Defendant McAndrews fired two shots into Mr. Cole. *Id.* ¶¶ 68-69.

Defendant McAndrews used her radio to call for an ambulance and relay that shots were fired. *Id.* ¶ 72. After the shooting, several officers, including Defendants Sgt. Brian Holm and Cpl. Brian Holm arrived on scene. *Id.* ¶ 77. Defendant Holm escorted Defendant Watson to his patrol car and directed another officer to obtain witness statements. *Id.* ¶ 78. Defendant Husum conducted a witness interview of Mrs. Cole, who screamed, "you

killed him!" *Id.* ¶ 79. A forensic pathologist subsequently determined that Mr. Cole died due to a gunshot wound to the chest. *Id.* ¶¶ 80-81.

On January 29, 2026, with leave of Court, Plaintiffs filed their Amended Complaint [#42], asserting three 42 U.S.C. § 1983 claims. Count One, asserted against Defendants McAndrews and Watson, is an excessive force claim. *Id.* ¶¶ 85-100. Count Two, for supervisory liability, is asserted against Defendants Husum, Holm, and unnamed Doe Defendants. *Id.* ¶¶ 101-111. Count Three, for municipal liability, is asserted against the Defendant City. *Id.* ¶¶ 112-136. Plaintiffs sue the individual Defendants in their individual and official capacities. *Id*. ¶ 32.

Defendants move to dismiss on multiple theories. On the excessive force claim, they argue that Defendant Watson is entitled to qualified immunity because he "ha[d] probable cause to believe that Mr. Cole had committed a domestic violence assault based upon the information provided by the 911 caller," *Motion* [#22] at 9. Relatedly, they argue that Defendant Watson's non-deadly force use of a Taser against Mr. Cole does not constitute an intentional violation of the right to be free from excessive force. *Id.* at 10. On the supervisory liability and *Monell* liability claims, they argue that Plaintiff failed to state actionable claims. *Id.* at 10-16. Defendants also argue that the John Doe defendants should be dismissed because they remain unidentified and that the statute of limitations bars further amendments to identify those defendants. *Id.* at 4. Lastly, Defendants seek dismissal of Police Chief Ron Thomas because no allegations are asserted against him. *Id.* at 16. The Motion [#22] contains no arguments seeking Defendant McAndrews' dismissal. *See also Reply* [#40].

## II. Legal Standards

### A. 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

**B. Qualified Immunity**

A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, the Court considers (1) whether the officials' "alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation and internal quotation marks omitted). If plaintiff fails to demonstrate either requirement, the court must grant the defendant qualified immunity and need not undertake additional analysis. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"In the Fourth Amendment excessive force context, it can be 'difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual the officer confronts." *Root v. Comstock*, No. 25-1123, 2026 WL 100785, at *5 (10th Cir. Jan. 14, 2026) (quoting *Mullenix*, 577 U.S. at 12)). Because excessive force determinations "depend[] very much on the facts of each case, . . . officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.'" *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (additional citation omitted).

## III. Analysis

### A. Consideration of the 911 Call

"Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025); *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017).

In *Fuqua*, the Tenth Circuit declined to take judicial notice of dash-camera and body-camera videos at the motion to dismiss stage. 157 F.4th at 1299. In so doing, it noted that "if the district court had considered the videos, it would have had to weigh evidence and make factual findings . . . when ruling on the motion to dismiss." *Id.* Doing so would have "flouted" Rule 12(b)(6), which demands that the court's role is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)). In sum, the district court properly declined the invitation "to use the videos to undermine and attack the veracity of the complaint" because "[t]hat's simply inappropriate on a motion to dismiss." *Id.*

The Court concludes that, in this case, considering the 911 call would require the Court to weigh the evidence of the caller's description of the events unfolding with the Coles against Plaintiff's allegations and to consider the truth of the matter asserted

therein. For that reason, the Court declines to take judicial notice of the 911 call. *See id.* ("[Defendants] sought to use the videos to undermine and attack the veracity of the complaint. That's simply inappropriate on a motion to dismiss."); *see also Germany v. City of Colorado Springs*, No. 25-cv-01746-CNS-MDB, 2026 WL 2436447, at *3 (D. Colo. Aug. 20, 2026) (noting that *Fuqua* changed the landscape; while district courts may have considered evidence that contradicted a complaint's allegations, "the Tenth Circuit made clear in *Fuqua* that this is no longer permissible.").

On a motion to dismiss, the Court is limited to the allegations within the Complaint's four corners—not Defendants' reinterpretation of the allegations or the underlying events. *Cf. GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (noting that a court may judicially notice a document attached to a motion to dismiss that was not incorporated by reference or attached to a complaint if "the document is referred to in the complaint and is central to the plaintiff's claim[.]"). At this stage, the Court must take Plaintiff's well-pleaded allegations as true.

**B. Count One: Excessive Force (Defendant McAndrews)**

Defendants assert no arguments concerning the excessive force claim against Defendant McAndrews; yet Defendants ask the Court to dismiss the Complaint "in its entirety." *Motion* [#22] at 16. Because Defendants assert no arguments, their Motion [#22] is **denied** to the extent it seeks dismissal of Count One against Defendant McAndrews.

**C. Count One: Excessive Force (Defendant Watson)**

To state an actionable excessive force claim under the Fourth Amendment, Plaintiffs must plausibly allege (1) "that the officers used greater force than was reasonably necessary to effect a lawful seizure; and (2) some actual injury caused by the unreasonable seizure that is not *de minimis*, be it physical or emotional." *Maresca v.*

*Bernalillo County*, 804 F.3d 1301, 1315 (10th Cir. 2015); *see also Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (noting that a Fourth Amendment excessive force claim requires “that a seizure occurred and that the seizure was unreasonable”).

Most of Plaintiff’s allegations against Defendant Watson are conclusory statements regarding his “conduct intentionally and/or recklessly and/or wantonly violat[ing] Mr. Cole’s constitutional rights,” *Am. Compl.* [#42] ¶ 91, and his having misused the authority of the state in which he was clothed. *Id.* ¶¶ 92, 96. While a court must accept well-pleaded factual allegations, it is not required to accept conclusory statements. *Twombly*, 550 U.S. at 555.

As for nonconclusory allegations, Plaintiffs allege that Defendant Watson “deployed his Taser onto Mr. Cole despite Mr. Cole being emotionally, cognitively, and/or physically impaired and unarmed – at a time when Mr. Cole posed no threat of harm to any person, but was merely doing his best to walk towards an officer while struggling to maintain his coordination and balance.” *Id.* ¶ 97. Elsewhere, Plaintiffs allege that Defendant Watson drew his Taser after Mr. Cole yelled vulgarities, walked towards Defendant Watson, and failed to heed Defendant McAndrews’ orders to stop. *Id.* ¶¶ 54-58, 50. Plaintiffs further allege that Defendant Watson deployed the Taser when he observed Mr. Cole moving towards Defendant McAndrews with an unsteady and uncoordinated gait. *Id.* ¶¶ 62-64, 68.

In their quest for dismissal, Defendants argue that Defendant Watson “ha[d] probable cause to believe that Mr. Cole had committed a domestic violence assault based upon the information provided by the 911 caller.” *Motion* [#22] at 9 (citing *Defs.’ Ex. A*, *911 Recording* and citing Colorado statutes and the Denver Revised Municipal Code); *see*

*also Reply* [#40] at 6-7. Defendants implicitly argue that Defendant Watson used no greater force than was reasonably necessary to effectuate Mr. Cole's lawful seizure. *See Motion* [#22] at 10 ("This use of the non-deadly force of a [T]aser, in an attempt to stop someone suspected of having engaged in a domestic violence assault, who has willfully disregarded and defied lawful orders from two uniformed police officers in marked cars . . . is not an intentional violation of a clearly established right to be free from excessive force in violation of the 4th and 14th Amendments to the United States Constitution."). In support of the probable cause argument, Defendants ask the Court to consider a recording of the 911 call. *Id*. at 9 (citing *Defs.' Ex. A* [#87-1]). However, in addition to the reasons articulated in section III(A) above, Defendants' reliance on the 911 call is improper because a recording of a call between the 911 caller and the 911 dispatcher naturally fails to demonstrate that officers called to a scene are aware of the 911 call's contents.

In response, Plaintiffs distill their allegations regarding the incident to one sentence: "In this case, Mr. Cole was shot and killed while posing no threat of harm to anyone and while holding a magic marker in his hand." *Response* [#39] at 5. Thus, Plaintiffs argue that "no basis [existed] for the use of deadly force, let alone non-lethal force such as a [T]aser." *Response* [#39] at 5. Plaintiffs further argue that Defendant Watson's actions were not objectively reasonable under the three-factor test articulated in *Graham v. Connor*, 490 U.S. 386, 396 (1989). *See id*. at 6-8.

"The 'reasonableness' of a particular use of force must be judged from the perspective or a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. To assess reasonableness, the Court must carefully

balance “the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the countervailing governmental interests at stake.” *Id*. (internal quotation marks and citation omitted). This analysis “requires careful attention to [1] the facts and circumstances of each particular case, including the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.” *Id*. The second factor is “undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer’s use of force.” *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017).

In support of their argument that Defendant Watson’s actions were not objectively reasonable, Plaintiffs point to these allegations, among others: (1) “Mr. Cole [was] leaning inside his black SUV”; (2) “Mr. Cole mad[e] no violent gestures, verbal threats, or any other actions that could be reasonably perceived as a threat of serious physical harm to officers or others”; (3) “At this time, it [was] daylight, and both of Mr. Cole’s hands [were] visible to Defendant McAndrews and Defendant Watson”; and (4) “Defendants McAndrews and Watson observe[d] Mr. Cole holding a magic marker.” *Response* [#39] at 7 (citing *Am. Compl.* [#42] ¶¶ 44, 66, 67, 73,

Because the Court must limit its analysis to the four corners of the Complaint at this motion-to-dismiss stage, the Court concludes that these allegations preclude granting Defendant Watson qualified immunity at this stage of the proceedings. The Tenth Circuit “[T]aser cases finding excessive force under *Graham* involved (1) an assault suspect who was effectively subdued when [T]ased, *Krueger v. Phillips*, 154 F.4th 1164, 1175 (10th Cir. 2025); (2) a misdemeanor offender who was not resisting arrest when [T]ased after being

tackled to the ground, *Emmett v. Armstrong*, 973 F.3d 1127, 1138 (10th Cir. 2020); (3) a misdemeanor offender [T]ased multiple times, *Perea v. Baca*, 817 F.3d 1198, 1200 (10th Cir. 2016); and (4) an individual who was [T]ased, but was not suspected of a crime, not a threat, and not fleeing, *Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010)." *Root*, 2026 WL 100785, at *6 n.12; *cf. Heard v. Dulayev*, 29 F.4th 1195, 1202-1207 (10th Cir. 2022) (examining Tenth Circuit precedent and finding the defendant entitled to qualified immunity "where, despite repeated warnings and orders to stop, an assault suspect continue[d] to step toward that officer at close proximity").

In *Krueger*, deputies pulled a suspect's vehicle over for minor traffic violations, removed the suspect from his vehicle by his hair, slammed his head on the pavement, and repeatedly Tased him as they attempted to handcuff him. 154 F.4th at 1174. The deputies Tased the suspect "in drive-stun mode up to eight times" when the suspect began to struggle and kick the deputies after being slammed to the ground. *Id.* at 1199. The first *Graham* factor weighed against the suspect because the deputies reasonably suspected the suspect of assault and battery when he kicked them. *Id*. However, the court determined that the second and third *Graham* factors weighed in the suspect's favor because "as the encounter wore on . . . [the suspect] ceased to fight back, lay exhausted on the ground, and begged for help"; nevertheless, the deputies physically restrained the suspect and tased him at least one more time. *Id*. at 1199-1200. While the court found the Taser's initial use to subdue the suspect was reasonable, the court determined that the Taser's continued use after the suspect was subdued was "unreasonable and therefore excessive." *Id*. at 1200. Additionally, in this 2025 decision, the Tenth Circuit stated, "[i]t is clearly established under our case law that continuing to strike felony

suspects with [T]asers . . . after the point it is obvious they are subdued and no longer an immediate threat to officers or others constitutes excessive force." *Id*. at 1202.

In *Emmett*, an officer arrested a suspect for interfering with a peace officer. 973 F.3d at 1130. The officer effectuated the arrest by tackling and Tasing the suspect, but the Taser was used without adequate warning and even though the suspect had stopped resisting arrest. *Id*. In that 2020 decision, the Tenth Circuit stated, "it was clearly established at the time of these events that using a [T]aser without adequate warning against a misdemeanant who has ceased actively resisting is unreasonable." *Id*. Therefore, the court reversed the lower court's grant of summary judgment based on qualified immunity. *Id*.

Finally, in *Cavanaugh*, an officer Tased a suspect in the back, without warning, even though the officer could see that the suspect did not possess a weapon and even though the suspect merely walked quickly away from the officer toward her front door. 625 F.3d at 663. In considering the reasonableness of the officer's actions, the court noted that a Taser has the capacity to "send[] up to 50,000 volts of electricity through a person's body, causing temporary paralysis and excruciating pain" and thus "seizes the [target] in an abrupt and violent manner." *Id*. at 665. The court found that the first *Graham* factor weighed in the suspect's favor because the officer was responding to a non-emergency request for help to find a person, not to a report of criminal activity. *Id*. The second *Graham* factor also weighed in the suspect's favor because the suspect did not pose an immediate threat to the officer or anyone else on the scene. And the third *Graham* factor weighed in the suspect's favor because the suspect was not actively resisting or fleeing arrest at the time the officer deployed the Taser. *Id*. In that 2010 decision, the Tenth Circuit stated, "the

law was clearly established as of August 25, 2003, . . . that [an officer] could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning." *Id*. at 667 (citing *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007)). Therefore, the court affirmed the lower court's denial of qualified immunity. *Id*.

Given this precedent and the Complaint's allegations, the Court concludes that the following was clearly established well before the at-issue August 5, 2023 incident: An officer cannot use a Taser on an individual who could not be reasonably perceived as a threat of serious physical harm to officers or others, where the individual did not visibly possess a weapon or make any verbal threats or threatening gestures, and where the officers were called to the scene on a request for medical assistance, not on a report of criminal activity. Therefore, Defendant Watson is not entitled to qualified immunity at this stage of the proceedings.

Accordingly, the Court **denies** Defendants' Motion [#22] to the extent it seeks dismissal of the excessive force claim (Count One) against Defendant Watson.

**D. Count Two: Supervisory Liability (Doe Defendants)**

Plaintiffs allege that John Does Nos. 1-10 "are/were supervisors of Defendants Watson and McAndrews," who "[a]t all times relevant to this action . . . knew or reasonably should have known, and/or participated in, and/or condoned, and/or ratified Defendant McAndrews' use of lethal force against the decedent" and "knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Plaintiffs and Mr. Cole[.]" *Am. Compl.* [#42] ¶¶ 103-106.

Defendants seek dismissal of the supervisory liability claim against the Doe Defendants because the statute of limitations has run and, therefore, "the Complaint

cannot be amended to identify these defendants in a way that would relate back to the filing of the Complaint[.]" *Motion* [#22] at 4 n.2; *see also Reply* [#40] at 6. Plaintiffs provide no counterargument in their Response [#39]. The Court examines this issue and finds that the supervisory liability claims against Doe Defendants must be dismissed.

"The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose." *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1191 (10th Cir. 2021) (quoting *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011). The statute of limitations applied to § 1983 claims in Colorado is two years. *See Blake v. Dickason,* 997 F.2d 749, 750 (10th Cir. 1993); *see also Braxton v. Zavaras*, 614 F.3d 1156, 1159-60 (10th Cir. 2010) (noting that the applicable statute of limitations "is two years from the time the cause of action accrued") (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)).

Here, Plaintiffs' claim accrued on August 5, 2023, when Plaintiffs allege Defendants McAndrews and Watson's actions resulted in Mr. Cole's death. *Am. Compl.* [42] ¶¶ 1-2. Therefore, the statute of limitations ran on August 5, 2025, and Plaintiffs' claims against Doe Defendants are barred unless they relate back to the original Complaint [#1], filed on August 5, 2025. *See Schiavone v. Fortune*, 477 U.S. 21, 29-32 (1986) (affirming dismissal of claims based on statute of limitations because the claims did not relate back under Rule 15(c)).

In relevant part, Rule 15(c)(1) states that an

> amendment to a pleading relates back to the date of the original pleading when: . . . (C) the amendment changes the party or the naming of the party against whom the claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.

FED. R. CIV. P. 15(c)(1) (emphasis added).

"[A]s a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of Rule 15(c)(3)(B)." *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see also Livingston v. Unified Gov't of Wyandotte Cnty.*, No. 25-3041, 2026 WL 1021159, at *3 (10th Cir. Apr. 15, 2026) (affirming district court's rejection of argument that a plaintiff's lack of knowledge of the defendants' identities was a legally cognizable mistake that tolled the statute of limitations); *Bell v. City of Topeka*, 279 F. App'x 689, 692 (10th Cir. 2008) (affirming the denial of leave to amend where the statute of limitations had run, and where plaintiff sought to substitute a named defendant for an original, unknown John Doe defendant). Therefore, the Court cannot construe Plaintiffs' lack of knowledge regarding the unnamed Doe Defendants' identities as a mistake, and Plaintiffs fail to meet Fed. R. Civ. P. 15(c)(1)'s requirements for future amendments to relate back to the original pleading.

Accordingly, the Court **grants** Defendants' Motion [#22] to the extent it seeks dismissal of the supervisory liability claim (Count Two) against the Doe Defendants. That claim is **dismissed without prejudice**.

### E. Count Two: Supervisory Liability (Defendants Husum and Holm)

To succeed on a claim of supervisory liability, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the

supervisor to violate constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1999)) (internal quotation marks omitted). The Tenth Circuit has further clarified that a plaintiff alleging supervisory liability must plead that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). In other words, an "affirmative link" must exist between the subordinates' alleged unconstitutional acts and the express or implied adoption of a plan or policy. *Id.* at 1200-01.

Recall that the Court has not dismissed Count One for alleged constitutional violations by Defendants McAndrews and Watson. Nevertheless, Plaintiffs fail to plausibly allege a supervisory liability claim. To begin, the Court examines the Amended Complaint's allegations. The allegations against Defendants Husum and Holm are sparse; namely (1) they were "the supervisors of Defendants Watson and McAndrews," *Am. Compl.* [#42] ¶ 31; (2) after Defendant McAndrews' shooting of Mr. Cole, "several officers respond[ed] to the scene including Defendants Sgt. Husum and Cpl. Holm," *Id.* ¶ 77; and (3) after arriving on the scene, Defendant Holm escorted Defendant Watson to his patrol car while Defendant Husum interviewed Mrs. Cole. *Id.* ¶¶ 78-79.

In sum, Plaintiffs merely allege that Defendants Husum and Holm were supervisors who arrived on the scene. While there are many conclusory statements regarding what Supervisory Defendants knew or should have known, *see id*. ¶¶ 105-111, there are no supporting allegations. Even when the Court views the allegations in the light most

favorable to plaintiff, the Court cannot reasonably infer that Defendants Husum or Holm promulgated, created, implemented or possessed responsibility for a continued operation of a policy that caused constitutional harm. *See Van Kimmey v. Capital One, N.A.*, No. 25-cv-03170-CNS-KAS, 2026 WL 2913324, at *3 (D. Colo. Aug. 6, 2026) ("While the Court may draw reasonable inferences based on alleged facts, the Court cannot supply the allegations. That is Plaintiff[s'] job, not the Court's."), *report and recommendation adopted*, 2026 WL 2906928 (D. Colo. Sept. 28, 2026). This is fatal to Plaintiffs' supervisory liability claim. *See Burnett v. Fallin*, 785 F. App'x 546, 550 (10th Cir. 2019) ("a plaintiff must show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates.") (internal quotations and citations omitted); *see also Peterson v. Creany*, 680 F. App'x 692, 696 (10th Cir. 2017) (noting that supervisory status, by itself, fails to establish "a link between the constitutional violation and a supervisor's breach of responsibilities.") (citations omitted).

Hence, the requirements for supervisory liability pursuant to *Dodds v. Richardson*, are grossly lacking in the pleaded facts. There is no "affirmative link" between the alleged unconstitutional acts of Defendants Watson and McAndrews, and there is no express or implied adoption of a plan or policy. 614 F.3d at 1200-01. Accordingly, the Court **grants** Defendants' Motion [#22] to the extent it seeks dismissal of the supervisory liability claim (Count Two) against Defendants Husum and Holm. That claim is **dismissed without prejudice**.

### F. Count Three: *Monell* Liability[2] (Defendant City of Denver)

"A core principle of Monell liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington County*, 983 F.3d 1166, 1191 (10th Cir. 2020). Thus, liability against a municipality "cannot be based on a respondeat superior theory, i.e., solely because the governmental entity employs a person or people who violated a plaintiff's constitutional rights." *Lee v. Poudre Sch. Dist. R-1*, 23-cv-01117-NYW-STV, 2024 WL 2212261, at *5 (D. Colo. May 16, 2024), *aff'd,* 135 F.4th 924 (10th Cir. 2025), *cert. denied,* 146 S. Ct. 26 (2025).

To state an actionable claim for *Monell* liability, and hold the City liable, Plaintiffs must allege: (1) an official policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury alleged, and (3) deliberate indifference on the City of Denver's part. *Est. of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016) (discussing the cause of action and defining each of its constituent elements in further detail) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)). "The 'official policy or custom' requirement 'was intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipality liability is limited to action for which the municipality is actually responsible." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

A municipal policy or custom may take various forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of

---

[2] The concept of *Monell* liability comes from *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

> employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & County of Denv.*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted). Here, Plaintiffs stake their *Monell* liability claim on two theories: (1) unwritten policy or custom and (2) failure to train and/or discipline. *Am. Compl.* [#42] at 17-22.

Pleading an informal or unwritten policy, including as a failure to train or supervise, requires the plaintiff to "plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a police officer['s] statements attesting to the policy's existence." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015).

Plaintiffs here allege beliefs regarding City of Denver's policies, but "fail to explain *why* they think these policies exist—they do not identify even one prior incident, and they offer no factual support for these alleged policies." *Dockery v. Greeley*, No. 23-cv-00047-RM-KAS, 2024 WL 3936655, at *9 (D. Colo. Aug. 26, 2024) (emphasis in original) (citing *Griego*, 100 F. Supp. 3d at 1216 ("The plaintiff must tell the Court at the outset, in the complaint, (i) why he or she thinks a policy exists—alleging specific facts; and (ii) what he or she thinks the policy is. The Court will then decide whether (i) plausibly suggests (ii)."). But if the plaintiff fails to provide that information, "the Court will disregard the alleged policy as a naked conclusion." *Id.*

As in *Dockery*, the Court cannot infer the existence of an allegedly unconstitutional policy or an alleged custom of inadequate training solely from the present incident. To the extent that any individual Defendant's alleged conduct is the product of inadequate training, that alone does not establish a city-wide or police department-wide custom of inadequate training or a policy to provide inadequate training. Therefore, Plaintiffs' *Monell* liability allegations are conclusory and warrant dismissal.

Accordingly, the Court **grants** Defendants' Motion [#22] to the extent it seeks dismissal of the *Monell* liability claim (Count Three) against the City of Denver. That claim is **dismissed without prejudice**.

**G. Unknown Claims against Defendant Chief Thomas**

The final Defendant listed in this Complaint's caption is Chief Ron Thomas, at times referred to in the Response [#39] as Chief "Thompson" or "Thomson." However, as the Motion [#22] points out, Defendant Thomas is not named as a Defendant in any of the claims asserted. Excessive force claims are levied solely against Defendants McAndrews and Watson, *Am. Compl.* [#42] ¶¶ 85-100; supervisory liability claims are levied against Supervisory Defendants Holm, Husum, and John Does Nos 1-10, *Id.* ¶¶ 101-111; and while Plaintiffs' discussion of their *Monell* liability claim includes, in part, allegations against Defendant Thomas, that claim is filed only against Defendant City. *Id.* ¶¶ 112-136.

Plaintiffs argue that their allegations regarding the *Monell* liability claim "demonstrate[] why Defendant Chief Thomspon [sic] is a properly named Defendant in the present suit. As the policy maker, Defendant Chief Thompson [sic] is responsible for the training, lack thereof, practices, and policies." *Response* [#39] at 12 n.2. They further argue that "Defendant Chief Thompson's [sic] policies and unwritten customs were the

direct and proximate result of the injuries Mr. Cole experienced. For these reasons, Defendant Chief Thomson [sic] is a properly named defendant in the present matter and must not be dismissed." *Id.* at 14 (citations omitted).

To the extent Plaintiffs name Chief Thomas as a Defendant in connection with the *Monell* claim, the Court construes those claims to be asserted against Chief Thomas in his official capacity. *See Licerio v. Lamb*, No. 20-cv-00681-WJM-STV, 2021 WL 4556092, at *20 & n.35 (D. Colo. July 15, 2021) (construing *Monell* liability-based allegations against police chief to be an official capacity claim where the plaintiff alleged that that the chief had knowledge of training and supervision deficiencies and failed to do anything about it) (citing Third Am. Compl. [#83] at 26-28 and citing *Johnson v. Bd. of Cnty. Comm'rs for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) (stating, "an official capacity suit is only another way of pleading an action against an entity of which an officer is an agent.") (internal quotations and citation omitted). Because the *Monell* claim fails, the official capacity claim against Chief Thomas must also be **dismissed without prejudice**.

To the extent that Plaintiffs sue Chief Thomas in his individual capacity, those claims must also be dismissed. "[I]n an individual capacity suit, liability is sought to be imposed against the individual governmental officer." *Johnson*, 85 F.3d at 491. Defendants argue that "[any] supervisory liability claim against Chief Thompson for individual liability fails for the same reasons as the other supervisory liability claim, *e.g.*, his is not alleged to have personally participated in the alleged constitutional violation." *Reply* [#40] at 10 (citing *Est. of Roemer v. Johnson*, 764 F. App'x 790 (10th Cir. 2019)). The Court agrees. "[T]o state a claim in federal court, a complaint must explain what each

defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Here, Plaintiffs' allegations against Chief Thomas are vague and conclusory. *See*, *e.g.*, *Am. Compl.* [#42] ¶ 117 ("Defendant Chief is the top policymaker"), ¶ 119 ("the Chief and his chain of command[] are ultimately responsible for the assignment of personnel for training and disciplinary purposes"), ¶ 120 ("the Chief [is] aware that DPD officers engage in violent behavior"), ¶ 121 ("the Chief [is] aware that [DPD] officers engage in reckless violated behavior against individual with mental illness"), ¶ 122 ("the Chief allow[s] officers to treat emotionally and/or physically impaired individuals in any violent manner they choose"), ¶ 125 ("the Defendant Chief . . . initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs"). These general and vague allegations fall well short of *Nasious*'s requirements. Therefore, the individual capacity claim against Chief Thomas must also be **dismissed without prejudice**.

Accordingly, the Court **grants** Defendants' Motion [#22] to the extent it seeks dismissal of the official and individual capacity claims against Defendant Chief Thomas. Those claims are **dismissed without prejudice**.

## IV. Conclusion

Based on the foregoing, IT IS HEREBY **ORDERED** that the Defendants' Motion to Dismiss [#22] is **GRANTED in part and DENIED in part**.

IT IS FURTHER **ORDERED** that the following claims proceed to discovery:

- Claim One (excessive force) against Defendant McAndrews; and
- Claim One (excessive force) against Defendant Watson.

IT IS FURTHER **ORDERED** that the following claims are **DISMISSED without prejudice**:

- Claim Two (supervisory liability) against Defendants Holm and Husum;
- Claim Three (*Monell* liability) against Defendant City of Denver;
- Official and individual capacity claims asserted against Defendant Chief Ron Thomas; and
- All claims against Defendants John Does Nos. 1-10.

IT IS FURTHER **ORDERED** that the imposed stay, *see Courtroom Mins.* [#43] at 1, is hereby **LIFTED**. The Court will set a scheduling conference as soon as practicable.

Dated: September 30, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge